JOURNAL ENTRY AND OPINION
This is an appeal from a judgment following a bench trial before Garfield Heights Municipal Judge Deborah J. Nicastro. Appellee Paul E. Turner was awarded $5,000 on the basis that there was no meeting of the minds concerning the nature of appellant J. Harvey Crow's obligations under a contract for services. Crow contends that he was improperly denied the opportunity to amend his answer and file a counterclaim, and that the evidence showed the terms of the agreement between the parties. We disagree and affirm.
The litigation focuses on Turner's involvement in a land dispute in Highland County, Ohio, and his retention of Crow to perform legal or other services related to that matter. Turner apparently is a descendant of slaves once owned by one Samuel Gist, who died in the early nineteenth century leaving a will that freed his slaves and devised them property in Highland County. The will was not enforced, however, and in 1851 the Ohio General Assembly enacted legislation to effect enforcement by appointing a trustee to carry out the will's provisions. Apparently, the land still was not properly distributed, and disputes continued into the twentieth century.
Crow began legal work on these issues on behalf of, inter alia, Turner's grandfather, as early as the 1950s. Turner claimed that he first met Crow in 1981, when he and a group of people descended from Gist's slaves sought legal assistance in the land disputes. At that time, Crow discussed issues with the group, but did not pursue any actions because no one had money to retain him. In 1996, Turner again approached Crow, then a nonagenarian no longer licensed to practice law, this time solely on his own behalf, and requested legal assistance. The parties agree that Turner paid Crow $5,000 but disagree on the services Crow was to perform in return.
Turner stated that Crow accepted the payment in order to begin a federal court action to resolve the Highland County land dispute because earlier state court actions within Highland County had been ineffective, and he believed that Crow was going to hire attorney Ford Noble to prosecute the action. Crow, however, claimed that Turner paid him $5,000 to view documents Crow had compiled throughout his representation of Turner's grandfather and others in the Highland County matter, and to reimburse him for services rendered to his grandfather, for which he had never been paid. Crow stated that he performed over $10,000 worth of services for Turner's relatives, that he informed Turner that he would do no more work and would not allow Turner to view his documents until paid for those services, and that Turner understood the $5,000 was only a partial payment. He also claimed, however, that an unspecified part of the $5,000 was intended to retain Noble to defend Turner in an existing Highland County action concerning the land. Crow testified that he paid Noble $2,000 as a retainer, but did not tell Turner how much money he had given Noble, and in fact failed to tell Turner that he had given Noble any money at all.
Crow testified as follows:
 Q. Did you ever inform Mr. Turner that you gave $2,000 to Mr. Noble?
 A. I never informed Mr. Turner of anything except Mr. Turner, so far as that was concerned, they or his group owed me a lot more money.
Turner claimed his first check, dated June 3, 1996, was made payable to Noble, which Crow returned, and at Crow's instruction he made out a new check, payable to Crow, with the word investigation on the memo line. Thereafter, Turner stated, Crow performed no services on his behalf, and Noble did no work on the promised federal action and only minimal work in the Highland County action for which Crow claims Noble was retained.
Crow claimed that Noble entered an appearance in the Highland County action and had succeeded in getting that action dismissed, and that he gave Turner access to all of the files he had compiled in his work on the Samuel Gist land settlement for Turner's grandfather and others. Turner admitted that Crow gave him his complete files for two weeks, but denied that such access was the subject of the payment. Neither Crow nor Noble ever submitted a bill or invoice detailing the work performed and charges there for, whether for work performed prior to or after the $5,000 payment.
There was also correspondence between Turner and Crow. Turner wrote a letter to Crow dated June 16, 1998, in which he requested Crow to act on the matter within the sixty days you stated you needed in a prior meeting. On December 14, 1998, Crow wrote a letter to Turner informing him that he would provide a copy of his entire files concerning the Gist settlement, including those documents supplied by Turner. Crow's letter then stated, After that time I will be glad to discuss the value of my service and the service of Attorney Ford L. Noble.
Turner responded by letter on December 24, 1998, and requested the return of his files and $4,500 of the $5,000 paid in June 1996. Turner's letter stated, inter alia, the following:
 To start proceedings concerning the Gist settlement matter, you instructed me to write a check for $5,000.00 to Attorney Ford Noble on June 6, 1966 [sic]. On June 15, 1966 [sic], during my visit to your office, the check to Attorney Ford Noble was returned to me by you uncashed. You then instructed me to write another check to you for $5,000.00 to start proceedings to file in Federal Court, Dayton, Ohio or Washington, D.C.
 On my next visit to your office nothing had been done. Again, I was told something would be filed within the next sixty days. You nor Attorney Noble never called to inform me as to what action was being taken.
* * *
 Each visit to your office, I was told some type of action would be taken within the next six weeks or sixty days.
Nothing was ever accomplished.
* * *
 Please be advised that legal action will be taken if this matter is not settled within the next 14 days after receipt of this letter.
On February 3, 1999, Crow wrote a letter in response, stating only that he would send Turner's papers to him within two weeks. The letter did not deny or seek to correct the allegations in Turner's December 24, 1998 letter, despite the threat of legal action.
On June 28, 1999, Turner filed a complaint against Crow alleging breach of contract and Crow filed an answer admitting a contract but denying all other allegations. The case was scheduled for a bench trial on October 27, 1999. On October 14, 1999, without leave of court, Crow filed an amended answer and counterclaim in which he admitted the $5,000 payment, but averred that the payment was made for services other than those Turner alleged. The counterclaim alleged two counts, the first that Turner filed the claim knowing his allegations were false in an improper attempt to induce Crow to refund the $5,000, and the second that Turner filed the complaint in order to impede Crow's pursuit of business opportunities. Crow alleged damages in excess of the municipal court's jurisdiction.
On October 20, 1999, Turner filed a motion to strike Crow's amended answer and counterclaim, arguing that the pleading was untimely filed without a motion for leave to amend, and that the counterclaim was both meritless and filed for an improper purpose, namely to remove the case from the municipal court's jurisdiction and delay the proceedings. The judge heard arguments on the amended pleading prior to trial on October 27, 1999, and determined that the counterclaim alleged only that Turner's claim was frivolous and could be addressed in a motion for sanctions pursuant to Civ.R. 11. She also concluded that denial of the counterclaim would not prejudice Crow, as she did not consider it compulsory pursuant to Civ.R. 13. She denied Crow's oral motion for leave to amend, stating in the journal entry that the motion for leave to file a counterclaim/cross-claim[1] is denied as untimely. The trial then went forward, with Turner and Crow the only witnesses.
On October 28, 1999, the judge rendered judgment for Turner in the amount of $5,000, plus interest from the date of judgment, but she denied Turner's request for return of his files, stating that she could not grant such relief because he had failed to include such a request in his complaint and failed to present evidence identifying the documents that belonged to him. Turner has not appealed this ruling.
Although the court's journal entry states only that judgment is granted in Turner's favor for $5,000, the judge stated her reasons for the decision on the record. She informed the parties that she did not believe Turner paid Crow for the purpose of getting Noble to represent him in the Highland County action, therefore, finding that no contract existed because the parties never reached a meeting of the minds. She reasoned that Turner would have requested some documentation of his grandfather's debt to Crow before agreeing to pay it, and she ordered the entire $5,000 refunded because she found inadequate evidence that Noble was paid anything, and no evidence of the work he performed for which he could be paid.
Crow's first assignment of error states:
 I. THE TRIAL COURT ERRED WHEN IT DENIED CROW'S MOTION TO AMEND HIS ANSWER AND STATE A COUNTERCLAIM.
As Crow's amended answer and counterclaim was not within the twenty-eight day time limit of Civ.R. 15(A), it could be filed only with leave of court. Although the rule states that leave to amend shall be freely given when justice so requires, the decision to grant or deny an amended pleading is within the judge's discretion. Wilmington Steel Products, Inc. v. Cleveland Elec. Illuminating Co. (1991),60 Ohio St.3d 120, 122, 573 N.E.2d 622, 624. We will not find an abuse of discretion unless the decision is unreasonable, arbitrary or unconscionable. Id.
Although Crow's amended pleading was not accompanied by a request for leave, prior to trial he made an oral motion for leave and argued that his counterclaim stated a cause of action for tortious interference with a business relationship,[2] but he did not cite additional facts or circumstances to support the allegations. Although an amended pleading need only satisfy the notice requirements of Civ.R. 8 if timely filed, a judge has discretion to require a party to provide factual support for an amended pleading before allowing a motion for leave to amend. Id. The Wilmington Steel court approved requirements that a motion for leave make a prima facie showing that new allegations can be supported, that the amendment is not an attempt to delay proceedings, and that the opposing party would not be prejudiced. Id. at 122-23, 573 N.E.2d at 625 (citing Solowitch v. Bennett (1982), 8 Ohio App.3d 115, 117, 8 OBR 169, 172,456 N.E.2d 562, 564-65). Because Crow made no such showing, we find it was not an abuse of discretion to deny the motion for leave to amend. We overrule Crow's first assignment of error.
The second assignment of error states:
 II. THE TRIAL COURT ERRED WHEN IT HELD THAT NO CONTRACT EXISTED BETWEEN THE PARTIES AND THAT THE DEFENDANT WAS TO REFUND $5,000.00.
Crow has not alleged any legal error in his argument of this assignment but claims only that the judge erred in making the factual determination that no contract existed because there was no meeting of the minds. According to Crow, the judgment was against the manifest weight of the evidence because both parties admitted that a contract existed, but disputed only its terms. Turner counters that no contract existed and the judge was correct, because, even though he believed he had a contract with Crow, neither could agree on what the agreement provided.
We will not reverse a judgment on such grounds if there is some competent, credible evidence going to all the material elements of the case. Central Motors Corp. v. Pepper Pike (1995), 73 Ohio St.3d 581,584, 653 N.E.2d 639, 642. If the evidence is susceptible to more than one interpretation, we must give it the interpretation consistent with the trial court's judgment. Id.
Crow argues that because Turner alleged the existence of a contract in his complaint, Crow admitted the existence of the contract in his answer, and the parties agreed at trial that Turner paid Crow $5,000 to perform services, the existence of a contract was conclusively established. Crow claims that only the terms of the contract were in dispute, and that the judge could not negate the existence of a contract on that basis. We disagree.
The judge concluded that no contract existed because the parties did not reach a meeting of the minds. Although the parties need not agree on every conceivable circumstance that might arise in order for a contract to exist, the parties must agree on its essential terms. Nilavar v. Osborn (1998), 127 Ohio App.3d 1, 13-14, 711 N.E.2d 726, 734. The subject matter of a contract is an essential term. Contrary to Crow's argument, the nature and substance of the goods and services to be exchanged is fundamental to the formation of a contract. While the exact character of Crow's services did not require full agreement, the parties here failed to agree even on the basic nature of his obligation. If both parties were believed, the difference between Crow's assertion that he was obligated only to allow access to his files and retain Noble's services to defend a state court action, and Turner's assertion that Crow was to retain Noble and aid him in filing an action in federal court, was too great to allow a judge to find a contract with enforceable terms. The complete disagreement as to the services Crow was to perform under the contract was critical to its formation. The fact that each party claimed the existence of a contract does not result in a stipulation; the parties differed so widely that they were in fact alleging the existence of two different contracts, and neither party stipulated or admitted to the contract the other alleged. On the evidence presented, the judge was entitled to conclude that Turner actually believed the $5,000 payment was intended to retain Crow and Noble to bring an original action in federal court, even if Crow claimed no such understanding. Although Crow baldly argues that his version of events is undisputed, the judge had ample evidence to support her factual conclusions. We overrule Crow's second assignment of error.
Judgment affirmed.
It is ordered that appellee recover of appellant his costs herein taxed.
This court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Garfield Heights Municipal Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
KENNETH L. ROCCO, J., CONCUR; ANN DYKE, P.J. CONCURS IN JUDGMENT ONLY
[1] Crow's amended pleading mistakenly referred to his counterclaim as a cross-claim.
[2] Crow has neither alleged nor provided factual support that his counterclaim stated any other cause of action, and none is apparent.